776 So.2d 418 (2000)
STATE of Louisiana
v.
Gerard A. BELL.
No. 99-KO-3278.
Supreme Court of Louisiana.
December 8, 2000.
Rehearing Denied January 26, 2001.
*419 Gerard A. Bell, Applicant, pro se.
Donald Whitehead North, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Anthony G. Falterman, District Attorney, Donald David Candell, Counsel for Respondent.
LEMMON, Justice.
In the trial that resulted in defendant's conviction of armed robbery, the prosecutor introduced evidence that defendant had committed another armed robbery two months earlier. The principal issue that prompted this court to grant certiorari is whether the admission of that other crimes evidence, found to be erroneous by the court of appeal, was harmless beyond a reasonable doubt.

Facts and Procedural History
The victim of the armed robbery owned the Hole Shot Saloon and was tending bar there on February 12, 1997. At about 11:30 p.m., a young Caucasian male with a shotgun and a slim African-American male with a semi-automatic weapon entered the bar. The African-American male, wearing a dark hooded shirt and a bandana that covered his face, ripped the telephone off the wall and placed the barrel of the weapon against the victim's head, threatening to shoot unless the victim complied with the robber's demand for money. The victim surrendered about $320 to the robber, who also took a bottle of vodka. Although it was dark in the bar, the victim also got a glimpse of a third male, who came to the door and stood there until the three men ran out the door.
Witness John Aguillard testified he saw two men run from the Hole Shot Saloon and drive off in a car that had been parked in front of the bar. Aguillard drove on until he encountered a sheriff's deputy, who stated that he was looking for three males who had just committed a robbery. Aguillard related his observations at the saloon to the deputy. He also stated that the car had been parked in front of his house the two preceding days, and he identified *420 Jimmy McCrystal as the person he had seen driving the vehicle some time before the robbery.
The next day, police officers stopped the subject car and arrested its occupants, McCrystal and Eric Gautreau, a juvenile. Gautreau admitted his involvement in the robbery and also implicated Kermit Jackson and defendant, who were arrested later that day.
At the joint trial of Jackson and defendant, both McCrystal and Eric Gautreau testified for the prosecution. According to their testimony, defendant drove McCrystal's vehicle to the Hole Shot Saloon. McCrystal, Ernie Gautreau (Eric's cousin) and Jackson got out of the vehicle, and defendant and Eric Gautreau drove down the street before returning to the saloon. McCrystal, Ernie Gautreau and Jackson entered the bar, with McCrystal standing by the door, unarmed. Ernie Gautreau was armed with a sawed-off shotgun and Jackson with a semi-automatic handgun. Shortly thereafter, the men left the saloon, re-entered the vehicle and headed toward Baton Rouge. The next morning, McCrystal, who lived in an apartment with Jackson and defendant, drove them to Dutchtown and dropped them off. McCrystal was later riding in the car with Eric Gautreau when the police stopped them and took them into custody.
In addition to his testimony regarding the Hole Shot Saloon robbery, McCrystal testified that he, Jackson and defendant had committed an armed robbery at the Brady Bar about two months before the instant crime. In the earlier incident, McCrystal acted as the getaway driver while Jackson, with the semi-automatic pistol he used in both robberies, and defendant, with a single barrel pump shotgun, perpetrated the robbery.
In closing argument, defense counsel focused on the numerous inconsistent statements given at various times by the two witnesses. Arguing that the witnesses lacked any credibility about who participated in the robbery, counsel stated:
The weapon. Not one witness put the weapon in the hands of Gerard Bell. Not one witness put Gerard Bell inside of that saloon, not even Mr. McCrystal, not even Eric Gautreau. As lying as they did, they didn't even put Gerard Bell inside that barroom.
The only thing they said that he was in the car, he drove. But with all of the lies they told, what can we believe? Can we believe any of it?
The prosecutor, in rebuttal argued:
As far as [defendant] is concerned, he didn't do anything. [Defense counsel] would have us believe he didn't do anything.... We were permitted for a very limited purpose, and I want to reiterate thatthe Judge will [instruct] you as to what the law is because I am not trying to inflame this jury. But when a single robbery involving McCrystal, according to McCrystal, McCrystal, Gerard Bell and Kermit Jackson, two months before, and this time McCrystal was the driver and the other two went in. You're not going to sit now, two months later, and say, Oh, I didn't know what was going on. I'm not going to buy that. You are not going to claim ignorance two months later when the same exact deal is going down. No. (emphasis added).
Defendant was convicted by a ten-to-two jury verdict. The court of appeal affirmed the conviction in an unpublished split decision. State v. Jackson, 98-2435 (La.App. 1st Cir.9/28/99). The court unanimously held that the trial judge had erred when he admitted the evidence of the earlier robbery to prove identity on the basis that the acts were so distinctive that they must have been performed by the same person. However, the majority further held that the error was harmless in light of the overwhelming evidence of defendant's guilt.[1]
*421 On defendant's application, this court granted certiorari. 99-3278 (La.5/26/00), 762 So.2d 625.

Other Crimes Evidence
Evidence of other crimes, wrongs or acts committed by the accused generally is inadmissible to prove the character of the person in order to show that he or she acted in conformity therewith. La.Code Evid. art. 404 B. However, such evidence may be admitted to prove identity under certain circumstances, as when the other crimes exhibit an almost identical modus operandi and were committed in close proximity and place. State v. Ballard, 351 So.2d 484 (La.1977). Nevertheless, the evidence must tend to prove a material fact genuinely at issue, and the probative value of the evidence must outweigh its prejudicial effect. La.Code Evid. art. 403.
In the present case, while there were some similarities between the two crimes,[2] the prior crime was not "so distinctively similar to the charged crime (especially in time, place and manner of commission) that one may reasonably infer that the same person was the perpetrator." State v. Moore, 440 So.2d 134, 137 (La.1983). Although the identity of defendant as a principal in the robbery was the primary contested issue because the victim and the bar patrons did not see the driver of the car, there were many differences between the two robberies, including the race of the perpetrators and the type of weapons used. The identity exception to inadmissibility under Article 404 B must be limited to cases in which the crimes are genuinely distinctive; otherwise, the rule may be swallowed up with identity evidence exceptions. George W. Pugh et al, Handbook on Louisiana Evidence Law, Official Comments to Article 404 B, cmt. (6) (1988).
The court of appeal correctly ruled that the trial judge erred in admitting the evidence of the earlier robbery, which tended to prove only that defendant was a person of bad character.

Harmless Error
The issue on which we granted certiorari is whether the admission of the other crimes evidence was harmless beyond a reasonable doubt.
The erroneous admission of other crimes evidence is subject to harmless error analysis under the standard set out in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). See State v. Gibson, 391 So.2d 421 (La.1980). Under Chapman, an appellate court must decide "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction," and "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." Chapman, 386 U.S. at 24, 87 S.Ct. 824.
The Chapman standard was later refined in Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), as follows:
"Consistent with the jury-trial guarantee, the question [Chapman] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand.... The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict *422 actually rendered in this trial was surely unattributable to the error." (emphasis in original).
When a defendant is being tried on a charge of armed robbery and the prosecutor chooses to present inadmissible evidence that the defendant has committed one or more armed robberies, and the trial court erroneously allows this inadmissible evidence, the prosecutor has a very heavy burden to demonstrate in the appellate court that the error was harmless beyond a reasonable doubt. The very purpose of prohibition of the admission of such evidence, as stated in La.Code Evid. art. 404 A, is to prevent the jury's convicting an accused on the basis of evidence that the accused's action in the charged crime was in conformity with his or her prior conduct and the evidence of the prior conduct tends to prove only that the accused was a person of bad character. When the prosecutor, as in the present case, emphasizes to the jury that the charged conduct was characteristic of the accused because he had committed the same crime before, the heavy burden on the prosecution in demonstrating harmless error becomes even more difficult to meet.
The prosecutor generally can overcome this heavy burden only with physical evidence directly connecting the accused with the charged crime, with independent testimonial evidence, or with strong and corroborated circumstantial evidence. For example, if the accused left fingerprints at the scene of the robbery, a reviewing court generally can reasonably conclude that the jury's guilty verdict was surely unattributable to the inadmissible evidence of other acts. Or if the accused was apprehended while fleeing the scene of a robbery in possession of stolen items, any error in the admission of inadmissible evidence of other acts generally would be harmless beyond a reasonable doubt.
In the present case, the only evidence[3] directly connecting defendant to the crime was the testimony of two co-perpetrators who were charged with participation in the robbery, but had not yet been tried.[4] A co-perpetrator who testifies for the prosecution is not truly a disinterested or independent witness, and the testimony of a co-perpetrator, who has made a deal with the prosecutor for his or her testimony or is in a position to benefit himself or herself by doing so, must be viewed with caution. State v. Gunter, 208 La. 694, 23 So.2d 305 (1945). Of course, the testimony of a co-perpetrator is often the only evidence available to the prosecutor, and convictions based on the sufficiency of such evidence often are upheld as within the province of the jury, who has been told of the consummated or potential deal and has heard arguments from both sides as to the credibility of the co-perpetrator. Indeed, in the present case, the sufficiency of the evidence presented by the co-perpetrators easily would be upheld, if the prosecutor had not introduced *423 inadmissible evidence for the purpose of influencing the jury's determination of defendant's guilt and then emphasized in argument the role of that evidence in the guilt determination.
While the prosecutor argues that he met the heavy burden of demonstrating harmless error because the jury believed the co-perpetrators after being informed of the pending charges against the witnesses, that is not the test under Sullivan and Chapman. The test is not whether a jury who did not hear the inadmissible evidence could have credited the testimony of co-perpetrators who had pending charges known to the jury; the test is whether the reviewing court can conclude, beyond a reasonable doubt, that the verdict rendered by this jury, who did in fact hear the inadmissible evidence, was surely unattributable to that highly prejudicial evidence which was introduced solely for its prejudicial effect.
On this record, we simply cannot conclude with any confidence that the jury's guilty verdict was surely unattributable to the erroneous admission of evidence of a prior armed robbery committed by defendant, especially since the prosecutor exploited the inadmissible evidence in rebuttal closing argument.

Decree
For these reasons, the defendant's conviction and sentence are reversed, and the case is remanded to the district court for a new trial.
KNOLL, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by KNOLL, J.
KNOLL, Justice, dissenting.
Although I agree with the majority's determination that the trial court erred when it admitted the evidence of the earlier robbery, I find, as did the appellate court, that the error was harmless in light of the overwhelming evidence of defendant's guilt.
Louisiana's harmless error test as enunciated in Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824(1967), examines whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Later, in Sullivan v. Louisiana, 508 U.S. 275, 278-79, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Court determined that the pivotal inquiry is "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether a guilty verdict actually rendered in this trial was surely attributable to the error." See also State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94.
In finding that the evidence against the defendant in the present case was not overly strong, the majority premises its discussion on the testimony of McCrystal and Gautreau, the co-perpetrators of the charged crime. Although the jury heard that these two witnesses testified with the "hope" that their testimony would be taken into consideration when their involvement with this armed robbery was addressed, the jury heard that no "specific deal" had been offered to McCrystal and that the State had not offered Gautreau anything in return for his testimony.
In my view, the majority's determination in this matter skews the fact-finding process in criminal proceedings. It is axiomatic that witness credibility is well within the province of the jury. The appropriate course of action, in my view, is to have the State present the testimony of co-perpetrators and let the jury make the credibility call. The jury verdict in the present case, 10 to 2, indicates to me that this jury when presented with the facts in this case fully weighed the testimony of defendant's co-perpetrators in light of whatever motive they might have for testifying and made a fully considered decision. Despite the fact that McCrystal and Gautreau's testimonies may have been jaundiced *424 by this fact, it is apparent that the jury weighed these factors in its assessment of the credibility of these witnesses and the determination of defendant's guilt.
Although the testimony of the co-perpetrators does not necessarily taint a jury's finding of guilt, the reality of the matter is that many times the State has no other alternative in its quest to bring criminals to justice. The State takes its witnesses as it finds them.
Accordingly, I would affirm the defendant's conviction, finding that the admission of the other crimes evidence was harmless error.
NOTES
[1] The dissenting judge disagreed that the error was harmless "in a case like this where the physical evidence is circumstantial and the credibility of the two other perpetrators who testified against the accused is questionable because one had a partial deal and hoped for additional help and the other hoped for gain as well." 98-2435 at p. 10.
[2] The crimes involved robberies of bars at night and occurred within two months of one another in Ascension Parish. The perpetrators in both cases were described as wearing dark hooded sweatshirts or starter jackets. During both robberies, the perpetrators disengaged the telephone at the scene.
[3] The prosecutor introduced two other items of relevant evidence(1) a gun, found in defendant's lawful possession, that was similar to one of the guns used in the robbery, and (2)a Saints starter's jacket, similar to the jacket worn by one of the robbers in both robberies, that contained defendant's driver's license in the pocket. This evidence, while useful, for example, to corroborate independent eyewitness testimony, did not directly connect defendant with the crime and had little probative value on its own. A similar starter's jacket was worn by one of the robbers in both crimes, but defendant was accused only of being the driver of the get-away car. The gun proved only that defendant lawfully owned one of the many thousands of 0.9mm pistols in existence.
[4] At the time of the trial, McCrystal and Eric Gautreau had been charged with the armed robbery of the Hole Shot Saloon, but had not yet been tried. During defendant's trial, McCrystal testified that although he had no "specific deal" in connection with this case, he had been advised that his testimony would be taken into consideration. Likewise, Eric Gautreau indicated that he had not been offered anything in return for his testimony, but he stated that he hoped he would not have to serve prison time for his participation in the crime.