788 So.2d 1255 (2001)
STATE of Louisiana
v.
Fred J. LEBLANC, Jr.
No. 00-KA-1322.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 2001.
*1256 Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, Attorney for Appellant, Fred J. Leblanc, Jr.
Paul D. Connick, Jr., District Attorney, Rebecca J. BeckerCounsel of Record on Appeal, Terry BoudreauxAppellate Counsel, Donald A. Rowan, Jr.Trial Counsel, Vincent Paciera, Jr.Trial Counsel, Assistant District Attorneys, Gretna, LA, Attorney for Appellee, State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, CLARENCE E. McMANUS and PHILIP C. CIACCIO, Pro Tem.
CANNELLA, Judge.
Defendant, Fred J. Leblanc, appeals from his conviction of aggravated rape of a child under 12 years of age and his sentence to life in prison at hard labor. For the reasons which follow, we affirm.
Jocelyn Nunez (Nunez), the great aunt of the victim, J.S., started living with J.S. beginning in late January of 1998. As a result of caring for J.S., she noted a "very heavy discharge" in J.S.'s underwear. Although she was concerned, Nunez initially was not acquainted with the Defendant and, therefore, had no reason to associate him with J.S.'s unusual physical manifestation. Nunez first came to know the Defendant when he telephoned her and asked "how [J.S.] was." The Defendant spoke to J.S. on the phone in Nunez's presence and Nunez noticed that the conversation appeared to greatly upset J.S., causing her to cry. Following the phone call, after an indeterminate amount of time, the Defendant came to Nunez's home with J.S.'s father, Nunez's nephew. J.S. gave her father a kiss, prompting the Defendant to ask, "Where is my hug and kiss?" Nunez was suspicious and thought that this was odd. One day, while J.S. was crying uncontrollably, Nunez asked her what was wrong. At that point, J.S. started telling her that the Defendant had "licked her, he put his thing in her, he's touched her bust... and she's had intercourse with him." Nunez and her husband immediately contacted the police.
On July 14, 1998, Detective Chad Jacquet of the Kenner Police Department received a complaint regarding alleged molestation of a juvenile by the Defendant. As a result, Detective Jacquet monitored an interview of J.S., which was set up at the Children's Advocacy Center pursuant to Jefferson Parish Sexual Assault Protocol.
*1257 J.S. stated that she had first become acquainted with the Defendant through her father, who had told her that the Defendant was her uncle. The Defendant babysat for J.S. while her father was working offshore and her mother was out socializing in "bars." Over a period of years, the babysitting took place at the Defendant's trailer, at an apartment, and in a home. J.S. stated that from the time she was four years old, the Defendant forced her to submit to a variety of sex acts, including fondling, oral sex, anal sex, and vaginal sex.[1] The Defendant also had J.S. perform oral sex on him, had her view pornographic videotapes and magazines and allegedly made video recordings of the sex acts which he performed upon her.[2] The Defendant repeatedly told her not to tell anyone.
Based on the interview, an arrest warrant was obtained for the Defendant and a search warrant was obtained for his trailer. Pursuant to the search warrant, video equipment, photographs, and cameras were seized.
The Defendant made a statement to Detective Jacquet that he had babysat for J.S. on occasion for brief periods of time. On one occasion, the Defendant stated that J.S. "jumped on his lap and imitated having sex with him." The Defendant stated that he promptly reported this behavior to J.S.'s parents and was told by them that J.S. had observed them engaged in sexual intercourse.
Thereafter, the Defendant was charged by grand jury indictment with the aggravated rape of a female juvenile under the age of 12 years, a violation of La. R.S. 14:42. The Defendant was arraigned on October 8, 1998 and pled not guilty.
Pursuant to notice by the State, on October 15, 1999, a hearing was held, prior to trial, to determine the admissibility of other crimes evidence under La. C.E. art. 404(B). The State argued that the acts were admissible to show the Defendant's knowledge, intent, system and motive. The trial judge ruled that such evidence would be admissible at trial.[3]
The State elected to seek the death penalty and on November 19, 1999, a motion to quash, addressed to the constitutionality of imposing the death sentence for a rape offense, was heard and denied. Trial before a jury of 12 persons began on February 14, 2000 and concluded on February 16, 2000. During trial, the State amended the dates of the alleged offense in the indictment.[4] The jury unanimously found the *1258 Defendant guilty as charged. On February 17, 2000 the same jury determined the penalty to be imposed. During their deliberations on March 3, 2000, the jury became hopelessly deadlocked. Therefore, as required by law, the trial court sentenced the Defendant to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.
On March 3, 2000, the Defendant filed a motion for appeal. The trial court granted the motion on March 13, 2000.[5] On appeal, the Defendant assigns three errors.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, the Defendant argues that the trial court erred in admitting evidence against him of other crimes which he previously committed.
The State sought to introduce evidence of Defendant's two prior guilty plea convictions for molestation of a juvenile, as well as the facts underlying those offenses. Prior to trial, on October 15, 1999, pursuant to notice by the State, a Prieur[6] hearing was held. At the hearing, M. P., then 21 years old, testified that the Defendant was at one time his stepfather. From the time that he was four or five years old until he was 13 years old, M.P. stated that the Defendant would perform oral sex upon him and would have M.P. do the same to him. The Defendant would also show M.P. pornographic videotapes. In addition, A. N., then 11 years old, testified that when she was four years old, Defendant performed oral sex upon her and had her perform oral sex upon him.
M.P. and A.N. testified similarly at trial. In addition, M.P. stated that the Defendant would give him presents. When he was between eight and ten years of age, Defendant asked M.P. if he could engage in anal sex with him. However, M.P. always managed to rebuff him. The trial court allowed this evidence of other crimes to be presented to the jury.
The Defendant contends that the other crimes evidence should not have been admitted, relying on La. C.E. art. 404(B), because it served no purpose other than to depict him as a bad person. The Defendant argues that the evidence was not admissible to show intent, motive, plan or lustful disposition[7] as these were not matters genuinely at issue in this case. The State argues, to the contrary, that the other crimes evidence presented at trial was admissible under the exceptions to La. C.E. art. 404(B) because it had independent relevance.
La. C.E. art. 404(B)(1), in pertinent part, provides:
Except as provided in Article 412 [regarding a victim's past sexual behavior in sexual assault cases], evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident....
This argument was recently considered by the Louisiana State Supreme Court in State v. Kennedy, 00-KK-1554, (La.4/3/01), ___ So.2d ___, 2001 WL 316170. In Kennedy, the defendant was charged with aggravated rape of a child under 12 years of age. The State sought to introduce other crimes evidence at trial *1259 regarding past acts of sexual abuse of a child committed by the defendant, particularly the testimony of a woman, now an adult, that approximately sixteen years ago, when she was eight or nine years old and residing with the defendant for the summer, the defendant had raped her on three occasions. This Court determined that the evidence of the other crimes was not admissible under the current state of the law, in cases such as the instant one, where intent was not at issue in the case, relying on La. C.E. art. 404(B), State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960, and State v. Maise, 99-0734 (La.App. 5th Cir.3/22/00), 759 So.2d 884. The Supreme Court granted the State's writ application and after argument and opinion determined that the other crimes evidence was not admissible within the context of that case. The Supreme Court found that prior jurisprudence addressing the admission of evidence of "lustful disposition" did not create an exception to Article 404(B) and could not be extended by the Court to cases where intent is not at issue.
In so holding, the Supreme Court specifically addressed the state's argument, that the other crimes evidence was admissible to prove motive and intent and held:
[T]he State argues in brief that the evidence of previous sexual assaults against a different child, allegedly committed some sixteen years earlier, is admissible as proof of the defendant's motive and intent to pursue his "unnatural carnal interest in sexual relations with prepubescent girls." We find that the State's other crimes evidence fits none of the permitted purposes enumerated in Article 404(B). This Court has not retreated from its observation in Moore that "the matter in issue must be real and genuine, and not one which the prosecution conceives to be at issue merely because of the plea of not guilty." (Citations omitted.)
The State in brief to this Court, prior to the finality of Kennedy, conceded that the issue before us would be governed by the decision reached in Kennedy. We agree that the issue presented in both cases is identical and Kennedy is controlling. As noted by the Court in Kennedy, "Justice Victory cautioned in McArthur, `[u]nless and until the legislature changes our statutory law to follow Rule 413(a) of the Federal Rules of Evidence, we will continue to apply the law as it presently exists'." Accordingly, we must conclude that Defendant's argument herein, that the trial court erred in admitting evidence at the trial for this offense of other sexual crimes which the Defendant previously committed, has merit.
The State next argues that, in the event that this Court rules that the other crimes evidence was erroneously admitted at trial, as we have, we should not reverse the conviction but rather find that the erroneous admission of the evidence was harmless in view of the unequivocal testimony of the victim that the Defendant forced her to engage in sexual acts with him.
The Defendant argues, to the contrary, that the inadmissible evidence cannot be considered harmless under the facts of this case. He presented evidence that he was in jail for approximately two years during the earlier part of the period during which the victim testified that the sexual acts occurred (1993-1998) and for four months in 1996 and that he only resided in a trailer for approximately one year of the five year period. Further, he argued that the doctor who examined J.S. testified that he found no evidence of sexual abuse. Also, the victim did not identify the large scar across his abdomen, despite the fact that she stated that she had seen the Defendant naked over a hundred times. Thus, the Defendant argues that, although the inconsistencies in the victim's testimony *1260 might be excused as a product of her youth, they militate against a finding that the erroneous admission of the other crimes evidence was harmless.
The test for harmless error was first announced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Chapman test was refined in Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The Sullivan inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Id., 508 U.S. at 278, 113 S.Ct. at 2081; State v. Maise, 99-0734 (La.App. 5th Cir.3/22/00), 759 So.2d 884.
We apply this standard to the evidence in this case and base our conclusion on our review of the entire record. The evidence was clear that J.S. was adamant in her basic testimony that the Defendant forced her to participate in numerous horrible sexual acts with him. She testified that the Defendant repeatedly forced her to engaged in sexual acts with him from the time she was 4 years old (1993) until she was 9 years old (1998), while he babysat her in his trailer. J.S. was specific about the kinds of sexual activity, the particular areas of her body and the Defendant's body involved, when, where and how often that it happened, how he told her not to tell anyone, how he had her view pornographic videos and magazines and recorded their acts. While there were inconsistencies in her testimony regarding time periods in which the acts took place, that is to be expected considering the tender age of the victim and the extreme stress which she was undoubtably under.[8] Thus, based on the record as a whole, we find that the guilty verdict rendered herein was surely unattributable to the erroneous admission of the evidence of the other sexual crimes that the Defendant committed and was therefore harmless. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error, the Defendant argues that the trial court erred in denying his motion for a mistrial based upon the State's mid-trial amendment to the indictment, because he was prejudiced in his ability to put on a defense.
The record reflects that at trial, upon the conclusion of the State's case, the State amended the indictment, changing the period of time during which the offense occurred from "between September, 1993 and January 1998" to "after July 14, 1996 thru [sic] January 1998." The amendment prompted an objection and motion for mistrial, which was denied. In setting forth the grounds for the denial, the trial judge stated,
THE COURT:
[Defense Counsel], there's not [sic] substantive change. It was just a change of date. You had all the information that you needed from the Bill of Particulars, which was supplemented by open file discovery.
In the alternative, the Defendant requested a recess so that he could adjust his defense. The trial court granted him one hour to do so.
During closing argument, the record shows that the prosecution explained to the jury why the time frame in the indictment had been amended. The stated reason for the amendment was "The statute making aggravated rape of a child under *1261 12 years a capital offense became effective in 1995[9] and, although the state provided evidence of a continuing crime beginning in 1993, the State wanted the jury to `convict him [defendant] the right way.'"
The Defendant asserts that he was seriously prejudiced by the trial court's ruling allowing the amendment to the indictment at that point in the case. In his brief, the Defendant argues that a substantial part of his defense was supported by the dates of the offenses listed in the original indictment. In fact, as established through testimony from the Defendant and his parole officer, the Defendant was in jail for a two-year period during the time that the indictment and J.S. alleged that the rapes occurred. Once the indictment was amended, however, the Defendant argues that he was left "very little to present by way of impeachment." The Defendant, citing State v. Pickett, 261 La. 237, 259 So.2d 307 (La.1972), further argues that in the least, "a substantial recess should have been ordered to permit appellant and counsel to reevaluate the defense."
Upon review, we find that the record does not reflect significant prejudice to the defense by the amendment of the indictment. The Defendant's testimony regarding his incarceration was not rendered useless by the amendment of the indictment. In fact, counsel for the Defendant used the amendment to cast doubt upon the veracity of J.S.'s entire testimony.
DEFENSE COUNSEL:
After she [the victim] testified, they had to amend the Indictment, because they realized that she testified that he was raping her while he was in jail. She testified and I made her say it three times, because I wanted to make sure it was clear, that there were no long periods of time where she didn't get raped by Fred Leblanc. He was in jail for two years.
Citing La.C.Cr.P. art. 468, the Defendant concedes that the indictment was not insufficient for not stating a proper date, as the date is not essential to the offense. He also concedes that "the trial court ordinarily has the authority at any time to cause the indictment `to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.' La.C.Cr.P. Art 487."
In this case, there is no dispute that the defense was aware of the range of years during which the State alleged that the Defendant had repeatedly raped the child victim. The defense had viewed the videotape which memorialized J.S.'s testimony and the Defendant was also provided open file discovery. J.S.'s testimony in this case, that the Defendant had sexually abused her from the time that she was four years old until she was nine years old, would not have changed regardless of whether the State amended the indictment. The changed date in the indictment was not a substantive change, and did not relate to an element of the offense with which the Defendant was charged. Furthermore, the record shows that the Defendant capitalized upon the change in the indictment to discredit J.S.'s testimony. This discredits the Defendant's contention that he was prejudiced in his defense.
Based on the foregoing, we find that the trial court did not abuse its discretion in denying the Defendant's motion for a mistrial based upon the amendment of the dates in the indictment. This assignment of error lacks merit.

*1262 ASSIGNMENT OF ERROR NUMBER THREE

By this assignment of error, the Defendant requests that we review his case for any errors patent on the face of the record.
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). We found no such errors.
Accordingly, for the reasons set forth above, we affirm the Defendant's conviction for aggravated rape and his sentence to life in prison, without benefit of parole, probation or suspension of sentence.
CONVICTION AND SENTENCE AFFIRMED.
CIACCIO, J. Pro Tem., Dissents.
CIACCIO, J. Pro Tem., Dissenting.
Because I believe that the admission of the other crimes evidence in this case is not harmless, I respectfully dissent. The primary evidence against the defendant at trial was the testimony of the victim. In State v. Bell, 99-3278 (La 12/8/00), 776 So.2d 418, 423, the Louisiana Supreme Court explained that the test for harmless error is "whether the reviewing court can conclude, beyond a reasonable doubt, that the verdict rendered by this jury, who did in fact hear the inadmissible evidence, was surely unattributable to that highly prejudicial evidence ..." (Emphasis in the Original).
The Bell court also stated as follows:
The very purpose of prohibition of the admission of such evidence, as stated in La. Code Evid. art. 404 A, is to prevent the jury's convicting an accused on the basis of evidence that the accused's action in the charged crime was in conformity with his or her prior conduct and the evidence of the prior conduct tends to prove only that the accused was a person of bad character. When the prosecutor, as in the present case, emphasizes to the jury that the charged conduct was characteristic of the accused because he had committed the same crime before, the heavy burden on the prosecution in demonstrating harmless error becomes even more difficult to meet.

(Emphasis Added).
In the present case, the prosecutor focused much of the closing argument on the inadmissible other crimes evidence. For example, the prosecutor stated,
And, one other thing the boy told you: He said it was numerous occasions that [the defendant] kept asking him could he place his penis in his behind. The boy kept saying, "No."
It's the same thing that he did to her [the victim], the only thing is, he placed it in her.
Later in closing argument, the prosecutor told the jury that "[t]he acts that happened from `93 on are similar to the Prieur that we presented to you with the other victims. It's a continuing act."
On this record, because of the emphasis placed on the other crimes evidence in closing argument, together with the lack of physical evidence, I do not believe that the other crimes evidence is harmless error.
As pointed out by the Chief Justice in State v. Kennedy, "... however repugnant the alleged criminal conduct may be, we must apply to this case, just as we do any other, well-settled evidentiary rules that promise a process for determining guilt or innocence fairly." The charged offense in this case certainly is repugnant, but until the legislature changes the law in this area, the courts will be constrained to apply the law as it exists.
*1263 For the above reasons, I respectfully dissent.
NOTES
[1] At trial J.S. described that sometimes, while they were watching television at the trailer, the Defendant would tell her to undress. She would comply, which would lead to the Defendant rubbing her "private" with his hands. He would also lick her "private," rub her "boobs," and tell her not to tell anyone. In the bedroom of the trailer he would "take his private and put it in mine." This he did "a lot." Sometimes "juice would come out" and go "in her private." He would also put his private in her mouth and make her [perform oral sex]. This too was done "a lot." He tried to put his "private" in her "behind" twice but it only went in a little.
[2] Tapes showing J.S. and the Defendant engaged in the sexual acts were not recovered.
[3] The Defendant did not contest the trial judge's ruling, finding admissible the other crimes evidence, until four months after the ruling and less than one week before trial. Due to the untimely nature of Defendant's writ, this Court refused to consider Defendant's writ application. 00-K-138, (La.App. 5th Cir. 2/9/00). The Louisiana Supreme Court also denied Defendant's writ. 2000-KK-0461, 754 So.2d 949 (La.2/14/00).
[4] Specifically, the State amended the indictment to read from "between September, 1993", to "after July 14, 1996". The Defendant bases his second assignment of error on this action by the State, asserting that the mid-trial amendment of the indictment was seriously prejudicial and grounds for a mistrial. Discussed infra.
[5] The date on the order is actually stated as "March 13, 1999"; however, this is clearly a clerical error.
[6] State v. Prieur, 277 So.2d 126 (La.1973).
[7] The Defendant correctly asserts in his brief that the State did not argue the "lustful disposition" exception at the Prieur hearing.
[8] It is this very difficulty, imperfect testimony by a child victim, that prompts the State to want to corroborate the child's testimony with evidence of similar illegal sexual acts committed by the Defendant against other children.
[9] The 1995 amendment added the second sentence to La. R.S. 14:42, subsection (C), allowing the death sentence if the victim was under the age of twelve years. Therefore, prior to 1995, the offense was non-capital.