MICHAEL E. KIRBY, Judge.

JjSTATEMENT OF CASE

The State charged Joel T. Willis with the armed robbery of Warrick Scott, in *18 violation of La. R.S. 14:64. Prior to trial, the State filed a Pñeur notice that it intended to introduce evidence that Willis committed the armed robbery of Viorica Ciunta ten days earlier. After a hearing the trial court allowed the State to introduce this evidence. Immediately prior to trial, the court heard and denied a defense Motion in Limine to Exclude Irrelevant and Prejudicial Information and to Exclude Unadjudicated Prior Bad Acts. Subsequent to trial, the jury found Willis guilty as charged.
Initially, the trial court sentenced Willis to thirty years. However, after finding him to be a triple offender, the court vacated this sentence, and imposed a sixty-six year sentence, with credit for time served. This appeal follows.

STATEMENT OF FACT

On August 24, 2009, Warrick Scott, a teenager, took the school bus to his school on Esplanade Avenue. Before going into the school building he went to get breakfast at a nearby gas station/convenience store, a block away. While in the store, he saw Willis talking to the cashier. As Scott paid, he “was watching L[Willis]” and saw Willis’s face at that time. Scott left the store and crossed the street. He saw Willis exit the store, but continued walking, thinking Willis was going home. At some point, Scott realized Willis was following him. Eventually Willis approached Scott and asked for his wallet. Scott saw Willis had a gun that he was holding so that others could not see. The barrel was pointed toward Scott and Willis threatened to “pop” Scott if he did not hand the wallet over, so Scott handed over his wallet.
The robbery occurred at approximately 8:00 a.m. on the Esplanade Avenue neutral ground and took about five to seven minutes. Scott borrowed a cell phone from a passerby to call the police. A copy of the 911 tape was introduced at trial. Officers Dominique Silvestri and Eugene Smuthers responded to the school where they interviewed Scott. Detective Krister Vilen arrived later. Scott described the gun as a silver semi-automatic handgun. However, Scott admitted that he was not familiar with the differences in types of guns.
Scott estimated his own height to be approximately six feet. He described Willis as an inch shorter, or approximately five feet, eleven inches. He also noted Willis had a “real chipped” front tooth and was wearing “grayish” “army plaid” shorts. Scott had difficulty estimating Willis’s weight due to the clothes the perpetrator was wearing. Scott weighed 155 to 160 pounds at the time, and he thought Willis was of similar size or weight. However, Scott did not dispute telling an investigating officer that Willis weighed 180 to 190 pounds. Officer Silves-tri testified that Scott described his assailant as a black male with a fade haircut, wearing camouflage green and tan shorts, a gray shirt with unknown lettering, and “a gap on his upper jaw.” Officer Silvestri also received information |sthat the assailant was 5'10" tall and weighed 180 to 190 pounds. His age was estimated at between twenty-five and thirty years old.
Two or three days after the armed robbery, Scott identified Willis in a photographic lineup presented by Det. Vilen. He also identified Willis in court as the person who robbed him. On cross-examination, Scott could not explain why his signature on the photographic lineup was dated August 24, 2008 — the date of the armed robbery, but he affirmed he had no doubt that Willis was the armed robber.
The officers retrieved a surveillance video from the convenience store. The video was played for the jury at trial as Det. Vilen pointed out the victim and then identified Willis as being “behind Scott wearing like a gray shirt with some writing on *19 it and ... camouflage long pants — short pants.” The video also showed the intersection of Claiborne and Esplanade Avenues, and Det. Vilen pointed out Scott crossing the street prior to Willis.
Det. Vilen used a still photo taken from this video for a press release. Someone responded after seeing it on television, and Det. Vilen used that information to verify information in the New Orleans Police Department’s database. He developed the photographic lineup shown to Scott, and it took Scott only two seconds to identify his robber.
According to Det. Vilen, Willis is 5'8" and weighs 135 pounds. Scott described him as 5'10" and 180 to 190 pounds.
The evidence of the other armed robbery introduced at trial, began with a tape from an August 14, 2009 911 call of an incident at a Shell gas station on Canal Street, which was played for the jury.
| ¿Santee Cook was working at the station on that day. She had gone outside to take a telephone call and was walking back and forth by the door. While she was on the phone, she saw a man with a T-shirt on his head walk in the store. He was wearing a white T-shirt, blue jeans, and tennis shoes. Ms. Cook never made eye contact with the man, but saw him as he walked onto the property, by the gas pumps, and into the store. He was not in the store long — a couple of minutes — before Ms. Cook saw the same man running or jogging out of the store. She had just finished her conversation and was walking back towards the store when through the window she saw the other cashier with her hands up and mouthing that they had just been robbed. Ms. Cook got in her car and attempted to follow the robber, but he went down an alley about a block from the gas station.
Detective Michael Sam presented Ms. Cook a photographic lineup. She identified the defendant.
The cashier described the armed robber to Det. Sam as a dark complexioned black male, but did not provide a height, weight or age. Detective Sam retrieved video camera footage from the gas station which contained images of the robber. This footage was shown to the jury.
A press release was issued with the wrong name, but Det. Sam developed Willis as a suspect in the August 14, 2009 robbery after learning of the Scott robbery. He subsequently presented a photographic lineup containing Willis’ picture to both of the witnesses involved in the Canal Street robbery, and they both identified Willis.

\ .ERRORS PATENT

The record reveals one error patent. The trial court failed to impose the sentence as a multiple offender at hard labor without benefit or probation or suspension of sentence as mandated by La. R.S. 15:529.1(G). However, La. R.S. 15:301.1(A) provides that in instances where the statutory restrictions are not recited at sentencing, they are deemed contained in the sentence, whether or not imposed by the sentencing court. State v. Williams, 2000-1725, p. 10 (La.11/28/01), 800 So.2d 790, 799. Accordingly, we need take no action to correct the trial court’s failure to specify that the defendant’s sentence is to be served without benefit probation or suspension of sentence as the correction is statutorily effected. See State v. Thomas, 2010-0651, p. 3 (La.App. 4 Cir. 6/8/11), 70 So.3d 96, 100-01.

DISCUSSION

In his sole assignment of error, Willis argues that the trial court erred in allowing the State to introduce the evidence of *20 the August 14, 2009 armed robbery at the Canal Street Shell station.
Pursuant to the pertinent part of La. C.E. art. 404(B),
evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
|Jn State v. Lee, 2005-2098, p. 44 (La.1/16/08), 976 So.2d 109, 139, the Court stated the requirements for admission of other crimes evidence:
Generally, courts may not admit evidence of other crimes to show the defendant as a man of bad character who has acted in conformity with his bad character. However, the State may introduce evidence of other crimes if the State establishes an independent and relevant reason, i.e., to show motive, opportunity, intent, or preparation, or when the evidence relates to conduct which constitutes an integral part of the act or transaction that is the subject of the present proceeding. LA.CODE EVID. ANN. art. 404(B)(1). Nonetheless, the State must provide the defendant with notice and a hearing before trial that it intends to offer prior crimes evidence. State v. Prieur, 277 So.2d 126, 130 (La.1973). Additionally, the State must prove the defendant committed the other acts. LA.CODE EVID. ANN. art. 1104; Huddleston v. United States, 485 U.S. 681, 690, 108 S.Ct. 1496, 1501-1502, 99 L.Ed.2d 771 (1988); State v. Crawford, 95-1352 (La.App. 3 Cir. 4/3/96), 672 So.2d 197, 207-208, writ denied, 96-1126 (La.10/4/96), 679 So.2d 1379. Furthermore, the other crimes evidence must tend to prove a material fact genuinely at issue, and the probative value of the extraneous crimes evidence must outweigh its prejudicial effect. State v. Hatcher, 372 So.2d 1024, 1033 (La.1979); State v. Sutfield, 354 So.2d 1334, 1337 (La.1978); State v. Jackson, 352 So.2d 195, 196 (La.1977); State v. Ledet, 345 So.2d 474 (La.1977).
In Prieur, 277 So.2d at 130, the court had set forth the prerequisites to the admission of other crimes evidence, in pertinent part, as follows:
(1) The State shall within a reasonable time before trial furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. No such notice is required as to evidence of offenses which are a part of the res gestae, or convictions used to impeach defendant’s testimony.
(2) In the written statement the State shall specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses.
|7(3) Prerequisite to the admissibility of the evidence is a showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant’s bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered.
The State’s Prieur Notice stated that it wanted to introduce the disputed evidence because “the issues of identity, motive, *21 intent, preparation, plan and mistake or accident will be a genuine issue of material fact at trial.” At the hearing, defense counsel noted that in a similar hearing in Case No. 491-666, “we had discussed, of course, the idea of closeness in time and the proximity, the two events.” [1]. Defense counsel also argued that if Willis chose to waive his Fifth Amendment right to remain silent in this case, it would infringe on his right to remain silent in the other case. The trial court rejected this argument as “not the issue.” Moreover, trial counsel admitted that “this whole situation could have been circumvented by the D.A.’s office nolle prossing one of the cases and combining them together.” Noting that in such a situation the jury would have learned “all of the information,” the trial court stated it had granted a Primr motion in the other case; that the defense had been placed on notice that a jury would hear the facts of both cases; and therefore it allowed evidence of the August 14, 2009 armed robbery in this case.
Immediately prior to trial, Willis filed a Motion in Limine, requesting a review of the trial court’s decision to allow the evidence.[2] Defense counsel did not dispute any ground upon which the State was attempting to introduce the evidence. 1 sRather, counsel argued that the prejudice from the evidence outweighed the probative value. Counsel argued that the only similarity between the two crimes was “some of the evidence begins to take place within a convenience store.” The trial court denied the motion.
Willis now argues: 1) the two crimes were not distinctive; 2) the evidence of the other crime was relevant only to show his criminal disposition; and 3) prejudice outweighs any probative value. The record presented does not specify the State’s reasoning for introducing the evidence of the other crime beyond the various reasons asserted in its Prieur notice. Since the defense argument at the motion in limine hearing focused on prejudice and probative value, it is unclear whether any objection relating to the State’s purpose in introducing the evidence has been preserved for review. See La.C.Cr.P. art. 841 (irregularity or error cannot be availed of after verdict unless objected to with grounds at the time of error/irregularity), see also State v. Welch, 615 So.2d 300, 303 (La.1993) (defendant waived complaint that state failed to provide Prieur notice, 1.e. failed to preserve irregularity involving evidence of other crimes or bad acts). However, any error resulting therefrom is harmless. The erroneous admission of other crimes evidence is subject to harmless error analysis. State v. Bell, 99-3278, p. 5 (La.12/8/00), 776 So.2d 418, 421.
When performing a harmless error analysis, the reviewing court must determine “whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction,” and “the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt.” Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Bell, 99-3278, p. 5, 776 So.2d at 421. The inquiry “is not whether, in a trial that occurred without the error, a guilty | verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely attributable to the error.” Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); Bell, 99-3278, p. 6, 776 So.2d at 421-422.
*22 In Bell, the Court could not conclude that the verdict “was surely unattributable” to improperly admitted evidence of another crime 99-3278, p. 8, 776 So.2d at 423, because it found that the only evidence connecting Bell to the crime for which he was convicted was testimony of co-perpetrators. Id,., 99-3278, p. 7, 776 So.2d at 422. The Court noted that a co-perpetrator’s testimony is not disinterested and must be viewed with caution. Id., citing State v. Gunter, 208 La. 694, 23 So.2d 305 (1945). This case is distinguishable from Bell in that the independent evidence used to convict Willis comes from disinterested parties — the victim, the investigating officer, and video tape.
Here, the victim testified that he first saw Willis at the convenience store/gas station where he “was watching” Willis. Scott testified that Willis was wearing “grayish” “army plaid” shorts. Scott also testified that Willis had a chipped front tooth. Officer Silvestri confirmed that he received this description from Scott. Moreover, the jury heard the 911 tape, wherein, the Assistant District Attorney pointed out in closing, Scott described “the gray shirt and the cargo shorts.”
The record indicates minor inconsistencies between Willis’s height and weight and the description Scott provided to the police. Officer Silvestri received a description of a man who was 5'10" tall and weighing between 180 and 190 pounds. Det. Vilen wrote in his report that Willis is only 5'8" and weighs 135 pounds. However, Scott also testified at trial that he was 6' tall and weighed 155 to 160 pound. Scott further testified that Willis was of a similar weight to his, but | inthat he could not tell for sure due to Willis’ clothes. These inconsistencies demonstrate only that Scott — a teenager — had difficulty estimating weight and height. However, Scott was certain of his identification of Willis in a lineup and in court. Any inconsistency is resolved by the fact that the jury saw Willis in a video that placed him at the gas station with Scott immediately before the armed robbery. The video confirms Scott’s identification by placing Willis at the gas station with Scott immediately prior to the commission of the crime. The jury also saw the video portray Willis crossing the street away from the gas station only seconds after it showed Scott leaving the gas station. The combined evidence of the video and Scott’s testimony prove beyond a reasonable doubt that any error in admitting evidence of the August 14, 2009 conviction was harmless. Surely, the conviction is not attributable to the evidence of the August 14, 2009 armed robbery on Canal Street. Accordingly, we find that Willis’s assignment of error has no merit and affirm his conviction.

CONCLUSION

For the reasons stated above, we affirm defendant’s conviction and sentence.
AFFIRMED.

. This record does not contain a copy of the transcript from this hearing

. The record does not contain a copy of the Motion in Limine.