EDWIN A. LOMBARD, Judge.
 

 hThe defendant, Mareio Thomas, appeals his conviction, arguing that the trial court erred in denying his motion to suppress. After review of the record in light of the applicable law and arguments of the parties, the defendant’s conviction and sentence are affirmed.
 

 Relevant Procedural History
 

 On December 13, 2007, the defendant was charged by bill of information with two counts: (1) possession of cocaine with intent to distribute, a violation of La. Rev. Stat. 40:967(B)(1); and (2) possession of methylenedioxymethamphetamine
 
 [1]
 
 with intent to distribute, a violation of La.Rev. Stat. 40:966(A)(2). He was arraigned on May 30, 2008, and pleaded not guilty. On October 1, 2009, after taking evidence on defense motions, the trial court found probable cause and denied the motion to suppress evidence. On April 7, 2009, the defendant was tried before a twelve-member jury and found guilty as charged on both counts. The State filed a multiple bill of information but withdrew it on January 6, 2010, and the defendant was sentenced to concurrent terms of fifteen years at hard labor on each count. The defendant’s motions for new trial and to reconsider the
 
 *98
 
 sentence were denied. This appeal follows.
 

 12Applicable Law
 

 The State bears the burden of proving the admissibility of evidence seized without a warrant when the legality of a search or seizure is placed at issue by a motion to suppress the evidence. La.Code Crim. Proc. art. 703(D). A trial court’s decision relative to suppress of evidence is afforded great weight and will not be set aside absent an abuse of that discretion.
 
 State v. Wells,
 
 2008-2262, p. 5 (La.7/6/2010), 45 So.3d 577, 581.
 

 Under both federal and state constitutions, a warrantless arrest must be based on probable cause that the citizen has engaged in criminal conduct and police detention or interrogation of an individual must be based on a reasonable, articulable suspicion that the individual has engaged in, is engaging in, or is about to engage in criminal conduct.
 
 State v. Tucker,
 
 92-2093, 92-2130 (La.5/24/1993) 626 So.2d 707, 710 (citations omitted). Notably, a citizen’s protection in Louisiana against unreasonable search and seizures is broader under the state constitution than the federal constitution.
 
 Tucker,
 
 626 So.2d at 711 (citing La.Code Crim. Proc. art. 215.1 and
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). An unconstitutional seizure occurs, rendering the evidence inadmissible, “when the police, without reasonable suspicion, either actually stop an individual or create a situation wherein an actual stop of the individual is imminent.”
 
 Tucker,
 
 626 So.2d at 713. Determination of whether an actual stop is imminent is “ascertained by examining the extent of police force employed in attempting the stop.”
 
 Tucker,
 
 626 So.2d at 712. The following non-exhaustive list of factors is useful in assessing the extent of police force employed and determining whether that force was
 
 virtually certain
 
 to result in an “actual stop” of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) lawhether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter.
 
 Tucker,
 
 626 So.2d at 712-713 (citations omitted).
 

 Discussion
 

 In his sole assignment of error, the defendant contends that because the police lacked reasonable suspicion to conduct an investigatory stop, the evidence he discarded in face of an actual imminent stop must be suppressed.
 

 The following evidence was adduced at the motion hearing and at trial. On the afternoon of December 14, 2006, due to an increase in violent crimes believed to be associated with narcotics transactions, members of the Special Operations Division were on patrol in the Seventh District. The patrol consisted of three or four vehicles and nine officers, including Officers Chad Gagnon and Travis Ward in the lead vehicle. They were attired in tactical clothing, not standard issue police uniforms. After passing an “econoline” style van parked in a driveway on North Nem-ours Street, Officers Gagnon and Ward observed two men standing next to the van. At the point perpendicular to the van, approximately twenty feet from the men, Officers Gagnon and Ward observed that the defendant, who was standing with his back to the van, had his right hand extended towards the other man with his palm up and both men were looking at the defendant’s upturned hand. When the de
 
 *99
 
 fendant saw the police vehicle, he quickly closed his fist, turned, and walked up the driveway towards the residence. At this point, Officer Gagnon, who was driving, stopped the vehicle to further investigate. The other man, subsequently | ^identified as Gennard Taylor, looked up, saw the officers, and began walking in the same direction as the defendant.
 

 As the officers exited the vehicle, the men began to flee towards the rear of the residence and the defendant discarded something underneath the van. Officer Gagnon observed the defendant’s arm and shoulder as he made a sweeping motion towards the van. The object fell underneath the van where it was partially hidden. At this point, Officer Gagnon believed that he had possibly interrupted a narcotics transaction or one that had already occurred. Focusing on the discarded object, Officer Gagnon recovered a clear plastic bag containing nine ecstasy pills, nine rocks of cocaine, and three bags of powdered cocaine. In the meantime, his partner pursued the defendant into the backyard where he apprehended him.
 

 Officer Manuel Castellón and his partner Officer Valentine Emory were in the second vehicle behind Officers Gagnon and Ward. From the passenger seat, Officer Castellón observed Officer Gagnon stop his vehicle and walk toward the residence. When Officer Emory stopped their vehicle and got out to follow Officer Gagnon, Officer Castellón saw a man on the side of the van running towards the house.
 

 At the motion hearing, the defendant related his version of events as follows. On the day in question he was playing basketball with a few family members and some friends in the park on North Nem-ours Street. An acquaintance of the defendant operated a makeshift mechanic shop across the street from the park. During the game, a friend of the defendant arrived who needed automotive work done on his car and who, accordingly, was directed to the mechanic. While he was talking to the mechanic, the basketball game broke up and the men decided to play a game of dice. The men asked the mechanic if it would be all right if they played |sdice in his house and he allowed them to do so. While the men were playing dice, however, three or four police cars arrived outside. According to Thomas, the officers began harassing a man across the street who then pointed to the house where the dice game was in progress. Believing the police were on their way into the house, Thomas and his associates discontinued the dice game. Soon, according to Thomas, the police kicked the door to the house open and entered. The police ordered everyone to the ground, and they complied. One of the men, Taylor, told the police that he had a gun and, after retrieving the weapon, the police handcuffed Taylor and everyone else in the room. Because Taylor was armed, they beat him and everyone else in the room and used a Taser gun on two of the men. After harassing one of the other men, the officers picked the defendant up and searched his pockets, recovering $1,200. According to the defendant, he planned to use this money to purchase Christmas gifts for his family. While the police were counting the money, one officer stated that they were going to plant ecstasy on him. Then they took the defendant outside, placed him in a police car, and told him that he was going to jail. Later, Thomas explained, the police recovered car keys from all the men inside and began searching all the vehicles. He heard them exclaiming as they recovered evidence in various vehicles. Next, the police removed four or five subjects from the house, telling them that drugs had been found in their vehicles. Finally, the police took everyone to jail.
 

 
 *100
 
 At trial, George and Luthicia Grayson testified on behalf of the defendant. The Graysons, residents in the area, were out walking on the day in question. As they approached the park, they observed three police vehicles come around the corner fast and stop at the “Mexican mechanic’s shop.” Mr. Grayson believed it was approximately 3:00 p.m. The officers spoke with a man who was seated in a 16car, who then pointed at the house that belonged to the mechanic. Mr. Grayson believed it was about six or seven officers. He stated that the officers went right to the house when the man pointed. Mr. Grayson explained that he was quite interested in what was happening because his son frequently plays basketball in the park, and he wanted to make sure that his son was not involved with what was going on. From outside the house, the Graysons heard people screaming and hollering. Then the police started bringing people out. The men were saying that they were hurt and that the police had robbed them. Mrs. Grayson saw the police bring the defendant out of the house. They could see that a few of the men were injured. Some of the men were arrested; others were released. At this time, additional police cars arrived on the scene. Mr. Grayson admitted to a 2005 aggravated battery conviction and a 1992 burglary conviction.
 

 Clearly, the trial judge found the officer’s version of events more credible than that of the defendant and the Graysons. Upon observing the defendant engaged in activity consistent with drug activity, the police officer stopped his vehicle to investigate further. The defendant, seeing the patrol car, closed his fist and began walking away and, as Officer Gagnon exited the vehicle, discarded the contraband. Based on this evidence, we do not find that the trial court abused its great discretion in denying the motion to suppress. At the point the contraband was discarded, Officer Gagnon had observed what appeared to be a drug transaction and, reasonably, stopped and exited his vehicle. Although the situation was fluid, at the point the officer exited his vehicle and the defendant discarded the contraband, the level of force displayed was short of the requisite virtual certainty that a stop would occur. The defendant was not surrounded by police or his path blocked; the officers’ weapons were holstered; and the police were some twenty |7feet from the defendant when he discarded the contraband. Thus, the defendant’s decision to fling the bag of drugs underneath the van was not the proximate result of an overwhelming police presence impinging upon his right to be left alone, but simply the split second decision of the defendant, who was utterly surprised by the sudden appearance of a police car at the base of the driveway at the worst possible moment. This assignment of error is without merit.
 

 Errors Patent Review
 

 A review of the record for errors patent reflects that the trial court failed to require that the first two years of defendant’s sentence on count one be served without benefit of parole as mandated by La.Rev.Stat. 40:967(B)(4)(b). Also, the trial court failed to require that the first five years of defendant’s sentence on count two be served without benefit of parole as mandated by La.Rev.Stat. 40:966(B)(2). However, La.Rev.Stat. 15:301.1(A) provides that in instances where the statutory restrictions are not recited at sentencing, they are contained in the sentence, whether or not imposed by the sentencing court.
 
 State v. Williams,
 
 2000-1725, p. 10 (La.11/28/01), 800 So.2d 790, 799. Accordingly, we need take no action to correct the trial court’s failure to specify that the defendant’s sentence be served without benefit of parole, probation or suspension of
 
 *101
 
 sentence. The correction is statutorily effected.
 

 Conclusion
 

 The defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Methylenedioxymethamphetamine is commonly referred to as MDMA and/or Ecstasy.