UNITED STATES COURT OF APPEALS    **August 30, 2011**

**TENTH CIRCUIT**

ZACHARY C. RHODES,

       Petitioner-Appellant,

v.

ANGEL MEDINA, Warden; THE
ATTORNEY GENERAL OF THE
STATE OF COLORADO,

       Respondents-Appellees.

No. 11-1290
(D.C. No. 1:10-CV-00550-PAB)
(D. Colo.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **BRISCOE,** Chief Judge, **MURPHY** and **MATHESON**, Circuit Judges.

Petitioner Zachary Rhodes, a state prisoner appearing pro se, seeks a Certificate of

Appealability (COA) pursuant to 28 U.S.C. § 2253 in order to challenge the district

court's denial of his petition for a writ of habeas corpus. Because Rhodes has not made

the required showing for a COA to issue, his application for a COA is denied.

I

Rhodes was convicted of first degree burglary and menacing by a Colorado court.

One night in July 2001, Rhodes and another man were searching for Rhodes's sister, who

---

[*] This order is not binding precedent, except under the doctrines of law of the case,
res judicata, and collateral estoppel.

Rhodes believed had been using drugs and was hurt. Rhodes believed that Cecilia Buchette, a friend of his sister, knew of her whereabouts. Buchette agreed to help Rhodes look for his sister, and the group traveled to several different residences seeking information. Rhodes also went to his home to get a gun. After several unsuccessful searches, the group arrived at Michael Thomas's apartment. Buchette knocked, Thomas opened the door, and the group entered Thomas's apartment. Rhodes testified that, at some point, Thomas told Rhodes that "he didn't give a f**** where he seen [Rhodes's sister], or a f**** where she at." Trial Tr. at 412-13. Rhodes responded by pulling the gun out of his waistband, pointing it at Thomas, and asking "now do anybody give a f**** about where my sister at?" Id. at 413. Rhodes testified that Thomas said "get the f**** out of my house." Id. at 420. Rhodes testified that Buchette then lunged for his gun, the two wrestled for it, and the gun went off while they were struggling. Buchette provided a very different version of events. She testified that, when they arrived at Thomas's apartment, Rhodes became angry at her and accused her of withholding information about his sister. She stated that Rhodes kicked her, hit her in the head with the butt of the gun and then tried several times to shoot her, but the gun misfired. Buchette also testified that, after determining the gun was unreliable, Rhodes stated that he would "knife that b**** to death." Buchette ran out of the apartment when Rhodes went to the kitchen to get a knife.

Rhodes was charged with attempted first degree murder, second degree kidnaping, first degree burglary, second degree assault, illegal discharge of a firearm, and menacing.

2

The jury found Rhodes guilty of burglary and menacing, and not guilty of all other charges. After conviction, the trial judge adjudged Rhodes guilty of four habitual criminal charges and, pursuant to the habitual criminal statute, sentenced him to sixty-four years' imprisonment on the burglary conviction and twelve years' imprisonment on the menacing conviction, to run concurrently. The Colorado Court of Appeals (CCA) affirmed Rhodes's convictions, and the Colorado Supreme Court denied certiorari. Rhodes filed a motion for post-conviction relief. The Colorado district court denied the motion, and the CCA affirmed.

Rhodes then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254 in the United States District Court for the District of Colorado, raising the following claims: (i) insufficient evidence; (ii) improper jury instructions; (iii) speedy trial violation; (iv) violation of right to a jury determination of habitual criminality; (v) Brady violation; (vi) ineffective assistance of trial counsel; and (vii) ineffective assistance of appellate counsel. In a thorough order, the district court dismissed claims (ii), (iii), and (vii) as unexhausted and procedurally barred, and dismissed Rhodes's remaining claims on the merits.

## II

A petitioner must obtain a COA in order to appeal a district court's denial of a § 2254 petition. 28 U.S.C. § 2253(c)(1)(a). A COA may be issued only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies a habeas petition on the merits, a COA may issue only when the

3

petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[1] Slack v. McDaniel, 529 U.S. 473, 484 (2000).

We incorporate the Antiterrorism and Effective Death Penalty Act's (AEDPA) deferential treatment of state court decisions into our consideration of a request for a COA. Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). Under AEDPA, a petitioner is not entitled to habeas relief unless he or she can establish that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We may not grant habeas relief merely because we conclude, in our independent judgment, that the state court was incorrect. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). "Rather, we may grant relief only when we are convinced the state court's application of federal law [went] beyond being erroneous and instead [was] objectively unreasonable." Snow v. Sirmons, 474 F.3d 693, 696 (10th Cir. 2007).

## III

Based on our independent review of the record and construing Rhodes's pro se pleadings liberally, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam), we

---

[1] Rhodes does not challenge the district court's determination that certain claims were unexhausted and procedurally barred.

conclude that Rhodes has not shown that reasonable jurists would debate whether his petition states a valid claim of the denial of a constitutional right. Therefore, we deny Rhodes's application for a COA.

A. *Sufficiency of the Evidence*

Rhodes argues that there was insufficient evidence to convict him of burglary because there was no evidence that he entered Thomas's apartment unlawfully or remained there unlawfully. The Due Process Clause guarantees that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof . . . ." Jackson v. Virginia, 443 U.S. 307, 316 (1979). Sufficient proof is proof beyond a reasonable doubt. Id. at 317-18. In reviewing a challenge to the sufficiency of the evidence in a habeas petition, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Our review under Jackson "is sharply limited, and a court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Brown v. Sirmons, 515 F.3d 1072, 1089 (10th Cir. 2008) (quotations and alterations omitted).

We agree with the district court that the CCA reasonably applied the correct legal standard when it rejected Rhodes's claim. One element of Colorado first degree burglary is that the defendant unlawfully entered or unlawfully remained after a lawful or unlawful

5

entry into a building or occupied structure. See Colo. Rev. Stat. § 18-4-202. The CCA ruled that a reasonable juror could have found that, even if Rhodes's initial entry into the apartment was lawful, Thomas implicitly withdrew any permission for Rhodes to occupy the apartment after Rhodes threatened him with a gun, and/or that Thomas explicitly withdrew any such permission when he told Rhodes to get out of his house. ROA, Vol. 1 at 162; see also Trial Tr. at 420, 426. This conclusion was not objectively unreasonable.

*B. Jury Determination of Prior Convictions*

Rhodes argues that his Sixth Amendment rights were violated when a judge, rather than a jury, found him to be a habitual criminal. Apprendi v. New Jersey, 530 U.S. 466 (2000), requires a jury to find any fact that increases the penalty for a crime beyond the statutory maximum. However, as Rhodes acknowledges, the Apprendi rule does not apply to the fact of a prior conviction. Federal law permits a sentencing judge to determine the fact of a prior conviction. See United States v. Booker, 543 U.S. 220, 244 (2005) (reaffirming the holding of Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" (emphasis added)); see also United States v. Prince, No. 10-3180, __ F.3d __ (10th Cir. 2011) ("We have held repeatedly that despite Apprendi, the 'fact' of a prior conviction may be found by a sentencing judge rather than a jury."). No reasonable jurist would conclude that the CCA's rejection of Rhodes's Apprendi claim was contrary to or an unreasonable

6

application of federal law.

Rhodes's related claim based on <u>Sullivan v. Louisiana</u>, 508 U.S. 275 (1993), also lacks merit. In <u>Sullivan</u>, the Supreme Court held that the Sixth Amendment requires a jury to determine guilt beyond a reasonable doubt. Contrary to Rhodes's argument, it does not follow that any fact that must be determined beyond a reasonable doubt under state law (such as a prior conviction) must also be found by a jury.

*C. Brady Violation*

Rhodes argues that his due process rights were violated when the prosecution deliberately withheld exculpatory evidence. In a post-conviction motion, Rhodes submitted affidavits from a fellow inmate and his sister that were somewhat inconsistent, but both related that Thomas stated he told police that Rhodes had permission to be in his apartment.[2]

The Due Process Clause prohibits the government from suppressing evidence favorable to the accused that is material to guilt or punishment. <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). Courts must evaluate the materiality of the allegedly withheld evidence "in light of the entire record in order to

---

[2] One affidavit states that Thomas said he had fled to Texas in order to avoid the district attorney's requests that he perjure himself by testifying that Rhodes did not have permission to be in his apartment. ROA, Vol. 3 at 580-81. The other affidavit states that Thomas said he offered to testify at trial, but he did not because the district attorney never returned his telephone call. <u>Id.</u> at 583.

7

determine if the omitted evidence creates a reasonable doubt that did not otherwise exist." Snow, 474 F.3d at 711 (quotation omitted).

The CCA determined that "even if the accounts contained in the affidavits submitted by defendant had been added to the trial testimony, they would not have created a reasonable likelihood that [Rhodes] would have been acquitted of burglary . . . ." ROA, Vol. 1 at 256. We agree with the district court that the CCA applied a substantially correct materiality standard, even despite that court's erroneous citation to the test relating to destruction of evidence rather than to Brady.

We also agree with the district court that the CCA's conclusion was not objectively unreasonable. Any statement by Thomas that Rhodes had permission to be in the apartment would have been contradicted by Rhodes's own testimony that Thomas told him to "get the f**** out of my house." Trial Tr. at 420. Rhodes's post-conviction attempts to characterize this statement as directed to Buchette contradicts his testimony at trial. When the prosecutor asked Rhodes "you said when your attorney asked you, before the shot was fired Michael Thomas told you to leave the house; he said, get out of my apartment, didn't he?" Rhodes replied, "Yeah" and testified that he did not get out immediately because Buchette charged at him. Trial Tr. at 426 (emphasis added). Because Thomas's alleged suppressed statements would have contradicted Rhodes's own testimony at trial, we cannot conclude that the CCA's determination that the statements were not material was objectively unreasonable. Cf. Snow, 474 F.3d at 713 (ruling that the state court's rejection of a petitioner's Brady claim was not an unreasonable

8

application of federal law where the withheld evidence could not be squared with "firmly grounded" testimony provided at trial).

*D. Ineffective Assistance of Counsel*

Rhodes contends that his trial counsel was ineffective for failing to interview Thomas prior to trial or to secure his testimony. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was constitutionally deficient, and that this deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).

The CCA rejected Rhodes's ineffective assistance of counsel claim because "there is no reasonable probability the outcome of the proceedings would have been different in light of the defendant's own testimony that, after he pointed a gun at [Thomas], [Thomas] told him to "get . . . out." ROA, Vol. 1 at 258. We agree with the district court that this is not an unreasonable application of Strickland. Even if Thomas's testimony could have been secured and this testimony would have been favorable to Rhodes, such testimony would have contradicted Rhodes's own testimony. The CCA was not unreasonable in concluding that any failure of counsel to investigate or obtain Thomas's testimony was not prejudicial.

Rhodes also argues that his counsel was ineffective for failing to adequately prepare him to testify at trial. Essentially, he argues that his counsel was ineffective for failing to prevent him from incriminating himself by testifying that Thomas told him to get out of the apartment. We agree with the district court that "the colloquy between

9

Petitioner and his trial counsel supports the Colorado Court of Appeals' determination that Petitioner's incriminating statement that [Thomas] told him to leave the apartment was not elicited by his trial counsel, but rather was volunteered by Petitioner." ROA, Vol. 1 at 359. The CCA's conclusion that counsel's performance was not constitutionally deficient was not unreasonable.

Finally, Rhodes argued in the district court that counsel's multiple errors or multiple trial errors, taken together, deprived him of a fair trial. However, he does not raise a cumulative error argument in his application for a COA. Therefore, we do not address it.

IV

Rhodes's motion to proceed in forma pauperis is GRANTED. Rhodes's request for a COA is DENIED and this matter is DISMISSED.

Entered for the Court


Mary Beck Briscoe
Chief Judge

10