**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

FLORA ESPINO,
  *Defendant-Appellant.*

No. 16-50344

D.C. No.
3:11-cr-03486-JAH-6

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted February 7, 2018
Pasadena, California

Filed June 18, 2018

Before: Consuelo M. Callahan and Jacqueline H. Nguyen,
Circuit Judges, and Joseph F. Bataillon,[*] District Judge.

Opinion by Judge Bataillon

---

[*] The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

## SUMMARY**

### Criminal Law

The panel affirmed a conviction for lying to a grand jury.

Reviewing for plain error, the panel held that the verdict form – which indicated that the jury would have to find the defendant not guilty beyond a reasonable doubt – was clearly erroneous, but that the error was harmless because the jury instructions taken as a whole, read in conjunction with the verdict form, clearly outlined the burdens of proof and the reasonable doubt standard.

### COUNSEL

Kenneth J. Troiano (argued), San Diego, California, for Defendant-Appellant.

Daniel E. Zipp (argued), Assistant United States Attorney; Helen H. Hong, Chief, Appellate Section, Criminal Division; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

BATAILLON, District Judge:

The jury convicted defendant Flora Espino of lying to a grand jury in violation of 18 U.S.C. § 1623. Espino appeals and argues that the district court erred as a matter of law in the language used in the verdict form and its subsequent submission to the jury. Espino contends the district court shifted the burden of proof, requiring the jury to find her not guilty beyond a reasonable doubt. We agree that the instruction was erroneous, but we affirm because Espino has not shown that the error was prejudicial.[1]

## BACKGROUND

Espino worked as a tax preparer for a real estate broker in Spring Valley, California. One borrower, Sean Desmond, served as a police officer at the Chula Vista Police Department. In 2006 he attempted to buy a $1.6 million home. As a police officer, his salary was $90,000 at the time. To assist him with qualifying for this loan, he worked with a broker named Jesse Rodriguez to prepare the loan application with a substantially inflated income. Rodriguez listed Desmond as self-employed at a fictitious business called "San Diego Private Detective and Consulting," with an annual income of $415,200. In fact, Desmond was not employed at this firm, nor did he make such an income. The mortgage lender agreed to make the loan, but only if it received a verification letter from a CPA regarding the income.

---

[1] Espino's other grounds for reversal are declined in a separate, concurrently filed memorandum disposition.

Rodriguez then emailed an associate named Adam Fukushima and asked for a CPA letter, and indicated the CPA might be contacted. Thereafter, upon request, Espino created a verification letter for Desmond on her letterhead stating:

> [F]or the last two years I have been filing and consulting Sean Desmond a private investigating detective on his taxes. Mr. Desmond has not had any change in employment and has filed as self-employed for the past two years. If you have any questions regarding Mr. Desmond fill [sic] free to contact me. . . .

She faxed the letter to Rodriguez with a cover sheet stating "CPA Letter" and addressed to "Jesse Rodriguez" and signed "Flora Espino." The lender then approved the $1.6 million dollar loan for Desmond. A year later, Desmond attempted to refinance with a new appraisal of $1.84 million. He again worked with Rodriguez on the application. Another CPA letter was needed in order to keep the bank from trying to figure out Desmond's employment. Espino then wrote a second CPA verification letter, indicating Desmond was self-employed and that she had prepared his last two tax returns. He defaulted on the loan within two years, and the bank lost half a million dollars.

A couple of years later, Homeland Security subpoenaed Desmond's loan file. In it they found Espino's income verification document. Agents went to her office, showed her the letter, and asked her about Rodriguez. She indicated that she did not know that name. Counsel then subpoenaed her before the grand jury where she testified that she was a tax preparer and had provided letters in the past for people who

have filed self-employment taxes. She stated she created these letters only for her own clients. When shown the letter in question, she testified that the signature was hers, but this is not the letter she wrote. She indicated she wrote something about Desmond coming to her in the future, but she never met him personally. She testified this appeared to be a cut and paste letter. She further testified she could not confirm details, as her laptop with all of her relevant records had been stolen shortly before she testified before the grand jury.

Thereafter, during a search of Rodriguez's office, agents found the letter from Espino to Rodriguez, the faxed cover sheet, and the second income verification letter from Espino to Rodriguez. They also found letters indicating that Espino had been paid to create these documents, and self-employment verification letters Espino had prepared for different clients.

In 2011 a grand jury returned an indictment against Rodriguez and twenty-five other defendants for wire-fraud and conspiracy to commit wire-fraud. Espino was charged with a single count (Count 15) of giving false declarations before a grand jury in violation of 18 U.S.C. § 1623. In particular, the indictment alleged that Espino lied about (1) "whether she had heard Jesse Rodriguez's name before" and (2) "whether she had signed a letter that contained, in part, the following language: 'for the last two years I have been filing and consulting Sean Desmond a private investigating detective on his taxes.'"[2]

---

[2] The third allegation in the indictment was dismissed.

In March of 2016, Espino proceeded with a jury trial. She argued primarily that (1) she did not remember sending the letter to Rodriguez, and (2) even if she did remember, she did not knowingly lie to the grand jury. The government called Homeland Security Special Agent Philip Portiera as a witness. He testified as to his meeting with Espino at her office; eight email exhibits found on her home computer and email account; and the refinance letter. The government also called Marina Carmelo and Jose Sanchez who testified about a loan package Espino prepared for them, wherein she used similar income-verification letters. The government then called Desmond who testified that he was a police officer and never worked at SD Private Detective and Consulting. Desmond further identified three tax transcripts from the IRS, showing his and his wife's stated income was between $100,000 and $131,000 per year. He stated that he did not know Espino and had not seen the letter she prepared.

Espino called one witness, a handwriting expert, who testified that she could not tell whether or not it was Espino's signature on the letter. The jury deliberated for less than an hour and then found Espino guilty.

**STANDARD OF REVIEW**

When a defendant fails to object to a verdict form, we review for plain error. *United States v. Pineda- Doval*, 614 F.3d 1019, 1031 (9th Cir. 2010). To determine whether the jury was misled, we must consider the instructions and the verdict form together. *See Boggs v. Lewis*, 863 F.2d 662, 666 (9th Cir. 1988) (citing *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1418 (9th Cir. 1986)). The burden is on the defendant to show the following: (1) "an error or defect," (2) that is "clear or obvious," and (3) that "affected the

appellant's substantial rights, which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009). With regard to the fourth prong, "the court of appeals has the *discretion* to remedy the error-discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* "Meeting all four prongs is difficult, 'as it should be.'" *Id.*

## DISCUSSION

Initially, Espino requested that the verdict form require the jury to find that she made two different false statements to secure a conviction, since she was charged in the conjunctive. The district court discussed a special verdict form that would separate the two statements. The court suggested an instruction that would state: "do you unanimously find beyond a reasonable doubt that she made a false statement with respect to this response or that response." The government agreed "as long as the jury is instructed that they have to be unanimous as to the specific fact that they need to find . . . there doesn't need to be any further inquiry beyond that." The district court drafted a verdict form with both statements. The government then suggested a simpler verdict form, stating: "the more words you add, the greater chance there is for some confusion or us misstating something … that could be problematic on appeal." The court then agreed and decided not to use a special verdict form. Instead, the district court crafted the following instruction: "We the jury in the above entitled cause unanimously find, beyond a reasonable doubt, that the defendant, Flora Espino is: _____ of providing materially

false testimony to the Grand Jury."  Espino did not immediately object.

The jury deliberated less than an hour and returned with the word "guilty" on the verdict form.  Espino then objected to the verdict form, arguing it "unfairly shifted the burden to the defense to prove … the defendant not guilty beyond a reasonable doubt."  The court responded "that objection is late, sir.  But regardless, the instruction indicated that their verdict had to be unanimous whether it was guilty or not guilty."  The government agrees that the verdict form was erroneous, as it required Espino to prove her innocence. However, the government cites a number of cases dealing with similar verdict forms, arguing they hold that even though such a verdict form is erroneous, the defective verdict form did not affect the defendant's substantial rights.  *See United States v. Rodriguez*, 735 F.3d 1, 13 (1st Cir. 2013) ("Having failed to establish prejudice, defendants cannot show that the language in the verdict form constituted plain error sufficient to warrant a new trial."); *United States v. Cardinas Garcia*, 596 F.3d 788, 799 (10th Cir. 2010) ("But even so, any error on the verdict form does not require reversal. We look to the jury instructions as a whole, and, in that light we are satisfied the jury was not misled about the government's burden of proving guilt beyond a reasonable doubt.  Cardinas therefore fails to overcome the third prong of the plain error standard—whether the error affected his substantial rights."). The government asserts that the error in this case is harmless because the instructions on the proper burden of proof overcome this issue.

We agree the verdict form language was clearly erroneous, thereby satisfying the first two prongs of the plain error analysis. The wording set forth in the jury verdict form indicated that the jury would have to find Espino not guilty beyond a reasonable doubt. A reading that Espino had the burden of proving herself innocent creates significant constitutional issues. *See Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993) ("What the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause."); *id.* at 278 ("[T]he jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt."); *In re Winship*, 397 U.S. 358, 364 (1970).

Still, the burden on the defendant is heavy, and she must show the error affected her substantial rights. *Rodriguez*, 735 F.3d at 11. When looking at prejudice, "it is entirely appropriate to consider the verdict form in conjunction with the jury instructions and the trial record as a whole." *Pulido v. Chrones*, 629 F.3d 1007, 1016 (9th Cir. 2010). The district court instructed the jury on the government's burden of proof beyond a reasonable doubt in both the preliminary and final instructions. The jury instructions taken as a whole, read in conjunction with the verdict form, clearly outlined the burdens of proof and the reasonable doubt standard. The instructions, on numerous occasions, clearly indicated that the jury must find guilt beyond a reasonable doubt, and Espino points to no other instructions, other than the verdict form, that she believes shifted that burden to her.

Although we find that, in this case, the erroneous verdict form was harmless, we reaffirm that a defendant's right to be found guilty only upon proof beyond a reasonable doubt is sacrosanct.[3]

**AFFIRMED.**

---

[3] In *In re Winship*, 397 U.S. 358, 361–62 (1970), the Supreme Court noted:

> The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation. The 'demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times, (though) its crystallization into the formula 'beyond a reasonable doubt' seems to have occurred as late as 1798. It is now accepted in common law jurisdictions as the measure of persuasion by which the prosecution must convince the trier of all the essential elements of guilt.' C. McCormick, Evidence, § 321, pp. 681—682 (1954); see also 9 J. Wigmore, Evidence, § 2497 (3d ed. 1940). Although virtually unanimous adherence to the reasonable-doubt standard in common-law jurisdictions may not conclusively establish it as a requirement of due process, such adherence does 'reflect a profound judgment about the way in which law should be enforced and justice administered.' *Duncan v. Louisiana*, 391 U.S. 145, 155, 88 S. Ct. 1444, 1451, 20 L.Ed.2d 491 (1968).