# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

ROBERT COOPER,
Defendant and Appellant.

S273134

Second Appellate District, Division Six
B304490

Los Angeles County Superior Court
TA140718

May 25, 2023

Justice Groban authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Jenkins, and Evans concurred.

PEOPLE v. COOPER

S273134

Opinion of the Court by Groban, J.

Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333), effective January 1, 2022, amended the substantive offense of active participation "in a criminal street gang" as well as the sentencing enhancement available for a felony committed "for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members." (Stats. 2021, ch. 699, § 3; Pen Code, § 186.22, subds. (a), (b)(1).)[1] Among other changes, Assembly Bill 333 now requires that, in order to demonstrate a pattern of criminal gang activity for the purpose of establishing a criminal street gang, the prosecution must prove that the two predicate offenses "commonly benefited a criminal street gang, and the common benefit from the offenses is more than reputational." (§ 186.22, subd. (e)(1).)[2]

_____

[1]    All further unspecified statutory references are to the Penal Code.

[2]    In order to establish that a gang is in fact a criminal street gang within the meaning of the California Street Terrorism Enforcement and Prevention Act (STEP Act), the prosecution must prove that gang members "collectively engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f).) We refer to the offenses that are used to establish "a pattern of criminal gang activity" under the STEP Act as predicate offenses. (§ 186.20 et seq.; see *People v. Valencia* (2021) 11 Cal.5th 818, 829.)

1

Defendant Robert Cooper was convicted of first degree murder (§ 187, subd. (a)) with gang (§ 186.22, subd. (b)(1)(C)) and firearm enhancements (§§ 186.22, subd. (b), 12022.53, subds. (b)–(e)), and a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). We granted review in this case to determine whether any of Cooper's sentencing enhancements must be vacated due to this recent statutory change to section 186.22.[3] The parties as well as the Court of Appeal below all agree that Cooper's jury was instructed under the prior law, that the new requirements in section 186.22 apply retroactively to Cooper's case on appeal under *In re Estrada* (1965) 63 Cal.2d 740, and that the prejudice from the instructional error is assessed under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (See *People v. Tran* (2022) 13 Cal.5th 1169, 1207 [the rule of *Estrada* applies to Assem. Bill 333's changes to § 186.22 and any instructional error resulting from the change in law is assessed under *Chapman*].) Applying the *Chapman* standard, we hold that the failure to instruct that the alleged predicate offenses must have "commonly benefited" the gang in a "more than reputational" manner (§ 186.22, subd. (e)(1)) was not harmless beyond a reasonable doubt. Here, the record contains evidence that could rationally lead to a contrary finding regarding whether the gang as a whole (as opposed to the predicate offenders themselves) benefited from the offenses in a nonreputational manner. We reverse Cooper's gang enhancement, as well as the firearm enhancement that is contingent upon the gang enhancement, and remand the case to

---

[3] Cooper's first degree murder conviction is not at issue in this appeal.

the Court of Appeal with instructions to remand the case to the superior court for any retrial of the same.

## I. Background

Cooper was a member of the Lueders Park gang.[4] Nicos Mathis and Monique Peterson were members of a rival gang, Mob Piru. On October 24, 2012, the three were all in Gonzales Park in Compton with a large group of people. Mathis challenged Cooper to a fight, but Cooper declined and walked away.

About 20 minutes later, a Buick drove into the park. Peterson recognized the two occupants of the Buick as Lueders Park gang members and urged Mathis to leave. Mathis refused to leave because he was waiting for a fellow gang member nicknamed "Hit Man." Eventually Mathis drove away looking for Hit Man with Peterson and two other friends. Mathis pulled over on the street where Hit Man had told him to meet. Peterson heard gunshots, and told Mathis to drive away, but they remained parked.

Peterson testified that she turned and saw two cars pull up, the Buick and an Infiniti. Cooper, "Mousey," and "Honcho" were in the Infiniti. She saw two guns fire toward the vehicle she was in. One of the guns was fired from the front passenger side of the Infiniti and the other from the rear passenger side. The Buick crashed into Mathis's car but drove away. Mathis was shot once in the head and four times in the body and later died of his wounds in the hospital.

---

[4] The brief summary of facts is drawn from the Court of Appeal's opinion.

An information charged Cooper with conspiracy to commit murder (§ 182, subd. (a)(1)); the murder of Mathis (§ 187, subd. (a)); and three counts of attempted murder (§§ 664, 187, subd. (a)). Each count also alleged firearm allegations (§ 12022.53, subds. (b), (c), (d), & (e)(1)), and that the crimes were committed for the benefit of, at the direction of, or in association with a gang (§ 186.22, subd. (b)(1)(C)). The information also alleged a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

A jury initially acquitted Cooper of three counts of attempted murder (§§ 664, 187, subd. (a)), but hung on a murder count (§ 187, subd. (a)) and conspiracy to commit murder count (§ 182, subd. (a)(1)). A retrial was held on the murder count only, with the gang (§ 186.22, subd. (b)(1)) and firearm enhancements alleged as before (§ 12022.53, subds. (b)–(e)). The jury then convicted Cooper of first degree murder (§ 187, subd. (a)) and found true the gang (§ 186.22, subd. (b)(1)) and firearm enhancements (§ 12022.53, subds. (b)–(e)). The trial court accepted Cooper's admission that he had suffered a prior strike conviction. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d).) The trial court sentenced Cooper to 75 years to life in prison, consisting of 25 years to life for the murder, doubled by the strike, plus a consecutive 25 years to life for the firearm enhancement pursuant to section 12022.53, subdivisions (d) and (e)(1). The trial court stayed the remaining gun and gang enhancements.

At the retrial, the jury was instructed on the gang enhancement pursuant to the former section 186.22 with CALCRIM No. 1401. The jury was instructed that to prove the gang enhancement, the prosecution must prove the "defendant committed or attempted to commit the crime for the benefit of,

4

at the direction of, or in association with a criminal street gang; and [¶] That the defendant intended to assist, further, or promote criminal conduct by gang members." The jury was instructed that the definition of a "criminal street gang" requires a "pattern of gang activity" and "as one or more of its primary activities," the commission of the predicate offenses of robbery and the sales of narcotics. To establish a "pattern of gang activity," the prosecution must prove "at least one of" the predicate robbery and the sales of narcotics offenses and that the offenses "were committed on separate occasions or were personally committed by two or more persons." Pursuant to the former law, the jury was instructed that the predicate offenses "if any, that establish a pattern of criminal gang activity, need not be gang-related." The jury was not instructed, as Assembly Bill 333 now requires, that the predicate offenses, if any, must have "commonly benefited [the] criminal street gang, and the common benefit from the offenses is more than reputational." (§ 186.22, subd. (e)(1).)

The records of conviction and gang expert testimony establishing the predicate offenses at the retrial show that two Lueders Park gang members committed one crime each: Ricky Lee Vaughn committed a robbery in violation of section 211 in 2012 and Donald Wayne Mahan sold narcotics in violation of Health and Safety Code section 11351.5 in 2012.[5] The gang expert testified that both Vaughn and Mahan are Lueders Park gang members. The gang expert had contacted Vaughn "numerous times" and Vaughn has "identified himself as a

---

[5] The Court of Appeal states this narcotics sale occurred in 2016, but the record of conviction and gang expert testimony reflect it occurred in 2012.

[Lueders] Park Piru gang member." The gang expert testified that Mahan's son "Doc" is "[p]robably the most senior [Lueders] Park Piru gang member on the street right now." He also testified that the Lueders Park gang claims territory in Compton and its primary activities are "theft, burglary, robbery, vehicle theft, narcotic sales, narcotic possession, weapons sales, weapons possession, assault to murder." The gang expert explained that "most gang members play that role of a gang member and act hard. But there's a specific group within each specific gang that are really your most active guys." He added: "They're out there going on missions, they're doing shootings, they're doing robberies, they function to do gang banging things. And that gets that gang's name out there." The gang expert further testified that through the generations, Lueders Park has had "different groups that do robberies, shootings, run girls, [and] sell narcotics."

In response to a hypothetical question, the gang expert testified to how the underlying murder benefited the gang, but did not testify as to how the alleged predicate offenses benefited the gang. The gang expert explained that a murder like the one in this case would benefit the gang by eliminating a rival and by maintaining respect, but that money is the "number one" gang function.

During the pendency of Cooper's appeal, Assembly Bill 333 amended section 186.22's definition of a "criminal street gang" to require proof of additional elements. As relevant here, in order to prove "a pattern of criminal gang activity" for the purpose of establishing a criminal street gang, the prosecution must now prove both that the required predicate offenses "commonly benefited [the] criminal street gang" and that "the common benefit from the offenses is more than reputational."

(Stats. 2021, ch. 699, § 3; § 186.22, subd. (e)(1).) Assembly Bill 333 clarifies that "Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (Stats. 2021, ch. 699, § 3; § 186.22, subd. (g).)[6]

Based upon the evidence presented at the retrial, the Court of Appeal found that the absence of a jury instruction on the new requirement that the alleged predicate offenses must have "commonly benefited" the gang in a "more than reputational" manner (§ 186.22, subd. (e)(1)) was harmless beyond a reasonable doubt. The Court of Appeal reasoned that the gang expert "testified that the offenses were committed by [Lueders] Park gang members and that robbery and sale of narcotics are some of the gang's primary activities. The evidence was uncontradicted. The benefit to the gang of robbery and sale of narcotics is more than reputational." (*People v. Cooper* (Jan. 14, 2022, B304490) [nonpub. opn.].) We granted review.

## II. Discussion

Cooper argues that the Court of Appeal erred in finding that the lack of jury instruction on Assembly Bill 333's new elements was harmless. Here, the jury was never instructed

---

[6] Assembly Bill 333 also made several other changes to section 186.22 that are not at issue in this appeal. These changes included narrowing the definition of "criminal street gang" to "an ongoing, organized association or group of three or more persons," whose members "*collectively*," rather than just individually, "engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f), italics added.)

that, as Assembly Bill 333 now requires, the predicate offenses must have "commonly benefited [the] criminal street gang, and the common benefit from the offenses is more than reputational." (§ 186.22, subd. (e)(1).) We agree with Cooper and find that the absence of jury instruction on this new requirement was not harmless beyond a reasonable doubt.

*Chapman* holds "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman, supra*, 386 U.S. at p. 24.) The jury instruction here implicates Cooper's due process rights by lessening the prosecution's burden to prove elements of the crime. (See *People v. Harris* (1994) 9 Cal.4th 407, 438 ["jury instructions in a state criminal trial omitting the requirement of proof of every element of a crime *beyond a reasonable doubt* are erroneous under the Fourteenth Amendment's due process clause"].) The due process "requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 278.) *Chapman* applies to a jury instruction that omits an element of an offense. (*Neder v. United States* (1999) 527 U.S. 1, 4.) When a jury instruction has omitted an element of an offense, our task "is to determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' " (*People v. Mil* (2012) 53 Cal.4th 400, 417 (*Mil*), quoting *Neder,* at p. 19.)[7]

---

[7] The Attorney General incorrectly characterizes the *Chapman* inquiry before us as asking whether the jury could draw a reasonable inference that the alleged predicate offenses

Since Assembly Bill 333's new elements did not exist at the time of Cooper's trial, the prosecution made no attempt to prove that the alleged predicate offenses provided a more than reputational common benefit to the gang and Cooper made no such concession. Instead, the records of conviction and gang expert testimony establishing the predicate offenses at the retrial merely show that two Lueders Park gang members committed one crime each: Ricky Vaughn committed a robbery in 2012 and Donald Mahan sold narcotics in 2012. The gang expert also testified that Lueders Park's primary activities are "theft, burglary, robbery, vehicle theft, narcotic sales, narcotic possession, weapons sales, weapons possession, assault to murder." The Attorney General suggests, and the Court of Appeal appears to have concluded, that crimes that have an inherent financial benefit and that are identified as the gang's primary activities qualify as a common benefit to the gang that is "more than reputational" under Assembly Bill 333. (See *People v. Cooper*, *supra*, B304490 ["The benefit to the gang of robbery and sale of narcotics is more than reputational"].) However, the record does not disclose the circumstances surrounding the predicate offenses and the prosecution never introduced any evidence about how the gang commonly benefited from them. While robbery and the sale of narcotics typically provide a financial benefit to the *offender*, the record contains evidence that could rationally lead to a contrary finding regarding whether the fruits of the offenses were intended to or

---

commonly benefited the gang. This, however, is not the proper standard. As noted above, our task "is to determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.'" (*Mil, supra*, 53 Cal.4th at p. 417.)

did benefit the *gang as a whole*. As the Attorney General concedes, robbery and narcotics sales "may of course be committed by gang members only for personal gain (which, relatedly, may benefit the gang only reputationally)." Indeed, "[n]ot every crime committed by gang members is related to a gang." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) In this way, the question of whether an offense is within the gang's primary activities is distinct from the question of whether a particular offense has "commonly benefited a criminal street gang." (§ 186.22, subd. (e)(1).) A jury determination regarding the gang's primary activities merely constitutes a conclusion about the types of activities in which a gang typically engages, whereas the question about a common benefit asks about how the specific predicate offense actually benefited the gang. (See *People v. E.H.* (2022) 75 Cal.App.5th 467, 473, 478–480 (*E.H.*) [finding that though the predicate offenses included crimes that could, in theory, provide a monetary benefit to the gang, the evidence did not show that these predicate offenses *actually* benefited the gang].) Furthermore, the jury here was specifically instructed that the predicate offenses "that establish a pattern of criminal gang activity[] need not be gang-related," in accordance with the former law as set forth in *People v. Gardeley* (1996) 14 Cal.4th 605, 621–622, disapproved of on other grounds by *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13. This instruction directly contradicts Assembly Bill 333's new requirement that the predicate offenses "commonly benefited [the] criminal street gang, and the common benefit from the offenses is more than reputational." (§ 186.22, subd. (e)(1).) Based upon the record, a jury could have reasonably concluded that the predicate offenses at issue were committed for personal gain alone.

Moreover, the Attorney General's interpretation would render superfluous much of the new amendment that requires both that predicate offenses "commonly benefited" the gang and that the common benefit is "more than reputational." (§ 186.22, subd. (e)(1).) Section 186.22, subdivision (e)(1) lists numerous predicate offenses that typically involve a financial benefit to the offender.[8] Prior to the amendments, section 186.22, subdivisions (e)(1) and (f), which define "pattern of criminal gang activity" and "a criminal street gang," have long required that the gang must have "as one of its primary activities the commission of one or more of" the enumerated predicate offenses. (§ 186.22, subd. (f).) The Legislature then decided to amend section 186.22 to require a heightened showing both that the predicate offenses "commonly benefited a criminal street gang" and that the common benefit is "more than reputational." (§ 186.22, subd. (e)(1).) If all that were required to prove a predicate offense is that the prosecution show that the gang member committed as one of the gang's primary activities any one of the enumerated predicate offenses that typically involve a financial benefit, then the additional requirement that the predicate offenses also "commonly benefited a criminal street gang" in a "more than reputational" manner would be mere surplusage. Finally, such an interpretation is inconsistent with the legislative history indicating the Legislature was concerned

---

[8] Specifically, the list of predicate offenses in section 186.22, subdivision (e)(1) includes: robbery (§ 211 et seq.), sale or possession for sale of a controlled substances (Health & Saf. Code, § 11007), grand theft (§ 487), grand theft of a firearm or vehicle (§ 487, subd. (d)), burglary (§ 459), money laundering (§ 186.10), felony extortion (§§ 518, 520), carjacking (§ 215), sale of a firearm (§ 27500 et seq.), and vehicle theft (Veh. Code, § 10851).

with "lax" interpretations of the prior law that allowed for overly expansive application of gang enhancements (Stats. 2021, ch. 699, § 2) and therefore sought to amend the law by "making the standards for applying a gang enhancement more rigorous." (Sen. Com. on Public Safety, Analysis of Assem. Bill 333, as amended May 28, 2021, p. 6.)[9]

The Attorney General tries to save his argument by claiming that because Mahan was a " 'senior' " member of the gang and Vaughn was "a well-known" member, a reasonable inference is that Mahan and Vaughn were among the "most active" gang members committing the gang's primary activities, making it in turn reasonable to infer that they committed the predicate offenses for the common benefit of the gang. However, even assuming arguendo that senior or well-known gang membership could possibly be evidence that predicate offenses commonly benefited the gang, the record does not support the Attorney General's characterization of Mahan and Vaughn as senior or well-known members of the gang. Rather, the gang expert testified, when asked if he was familiar with Mahan, that "I know Doc, his son. Doc's a [Lueders] Park Piru gang member.

---

[9] At oral argument, defense counsel acknowledged that one interpretation of Assembly Bill 333 is that, though the evidence presented here does not suffice, it is permissible, as a general matter, to use circumstantial evidence to prove a common benefit that is more than reputational. It is also worth noting that a financial gain is not the only way that the prosecution can prove a more than reputational common benefit to the gang. Assembly Bill 333 provides several other examples of a more than reputational common benefit, including, but not limited to, "retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (§ 186.22, subd. (g).)

Probably the most senior [Lueders] Park Piru gang member on the street right now. Been a long time in prison. I think he's been out maybe three or four years now. But just saw him a couple weeks ago. Probably there today. He sets up on Saunders and Bradfield and goes to sell his narcotics." The most plausible read of this testimony is that the gang expert testified that Mahan's son (and not Mahan himself) was "the most senior" Lueders Park gang member. At a minimum, this testimony does not allow us to conclude beyond a reasonable doubt that the gang expert was referring to Mahan himself. Moreover, to the extent the Attorney General is suggesting that we can determine beyond a reasonable doubt that Mahan was a senior gang member simply because a family member was a senior gang member, we reject that argument out of hand. As for Ricky Vaughn, though the Attorney General contends that the gang expert characterized him as a "well-known" gang member, the gang expert actually testified that "I've contacted Ricky numerous times. I've spoken to Ricky. He identified himself as a [Lueders] Park Piru gang member. I've taken photographs of him throwing up the [Lueders] Park Piru Hand sign. [¶] I've recently assisted on another case where Ricky Lee Vaughn has identified himself as a [Lueders] Park Piru gang member again." Again, even assuming arguendo that senior or well-known gang membership could possibly be evidence that predicate offenses commonly benefited the gang, this testimony does not support the Attorney General's characterization. The gang expert testified not that Vaughn was a well-known or senior gang member, but simply that Vaughn was known to the gang expert through several prior contacts with him.

In sum, the grand total of evidence relied on by the Attorney General for proving that the alleged predicate offenses provided

a common benefit that is more than reputational to the gang is that there was a robbery and a sale of narcotics by gang members and that a primary activity of the gang is to commit robberies and the sale of narcotics. Under these circumstances, we cannot conclude "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman, supra*, 386 U.S. at p. 24.)[10]

## III. Disposition

For the above reasons, we reverse the Court of Appeal's affirmance of Cooper's gang enhancement.[11] Since the firearm

---

[10]     As Cooper argues, the Court of Appeal's holding is an anomaly among opinions considering Assembly Bill 333 and which have reversed gang enhancements. (E.g., *E.H., supra*, 75 Cal.App.5th at pp. 476–480; *People v. Lopez* (2021) 73 Cal.App.5th 327, 343–346 (*Lopez*); *People v. Sek* (2022) 74 Cal.App.5th 657, 664–670; *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 822–823; *People v. Vasquez* (2022) 74 Cal.App.5th 1021, 1032–1033.) In each case, the predicate offenses and the evidence supporting them are different and, as the Attorney General maintains, these decisions have distinguishing features. Nevertheless, though we do not here decide the unique facts of those cases, Cooper is correct that in each case the Court of Appeal reversed a gang enhancement after the enactment of Assembly Bill 333 for a trial that occurred without Assembly Bill 333's guidance. Indeed, the decision below is the only Court of Appeal opinion cited in the parties' briefing affirming a gang enhancement after the enactment of Assembly Bill 333 for a trial that occurred before Assembly Bill 333 was enacted.

[11]     As noted above, Assembly Bill 333 also requires that gang members "collectively" engage in a pattern of criminal gang activity under section 186.22, subdivision (f). Cooper requests that if we do not reverse the gang enhancement based upon the new requirement that the predicate offenses commonly benefit

enhancement alleged under section 12022.53, subdivision (e)(1), is contingent on a true finding on the gang enhancement under section 186.22, we reverse the Court of Appeal's affirmance of that firearm enhancement as well, and remand the case to the Court of Appeal with instructions to remand the case to the superior court for any retrial of the same. (See *Lopez*, *supra*, 73 Cal.App.5th at pp. 346–348; *E.H.*, *supra*, 75 Cal.App.5th at p. 480 ["The proper remedy for this type of failure of proof — where newly required elements were 'never tried' to the jury — is to remand and give the People an opportunity to retry the affected charges"].)

**GROBAN, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**JENKINS, J.**
**EVANS, J.**

---

the gang in a more than reputational way, that we instead remand the case to the Court of Appeal so that the failure to instruct on the element of collective action by the gang can be briefed there. Cooper has also filed a motion for eventual remand or, alternatively, to expand the issues on review based upon similar reasons. Since we are reversing Cooper's gang enhancement on the issue that we granted review upon, Cooper's requests that we remand or expand the issues based upon another theory is rendered moot.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Cooper

_____

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 1/14/22 – 2d Dist., Div. 6
**Rehearing Granted**

_____

**Opinion No.** S273134
**Date Filed:**  May 25, 2023

_____

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  Allen Joseph Webster, Jr.

_____

**Counsel:**

Elizabeth K. Horowitz, under appointment by the Supreme Court, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller, Idan Ivri and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Elizabeth K. Horowitz
Law Office of Elizabeth K. Horowitz, Inc.
5272 South Lewis Avenue, Suite 256
Tulsa, OK 74105
(424) 543-4710

Charles S. Lee
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6068